## In re Reigle

*David Moskowitz,* for appellant.
*Eugene E. Keller,* for appellee.

BODLEY, *J.,* January 24, 1978 — This is an appeal from the award of a board of view, raising legal questions by way of objections to the report of the viewers.

The condemnees, Ronald L. Reigle and Helen A. Reigle, his wife, were the owners in fee simple of a property located at 3122 Riverside Avenue, Fergusonville, Bucks County, Pa. until the condemnor, Redevelopment Authority of the County of Bucks, on October 20, 1975, filed a declaration of taking against the subject property. A board of view filed its report on January 24, 1977, awarding general damages of $31,500, a replacement housing allowance of $1,300, and section 610 reimbursement of $500. From the total award, the board deducted the sum of $14,264, representing the amount which condemnees had previously received by way of flood damage insurance proceeds. Condemnees filed an appeal from and objections to the board's report. A jury trial was demanded. We here consider the legal questions raised by the objections.

The appeal from the report of the board of view is filed pursuant to sections 515 and 516 of the Emi-

nent Domain Code.[1] Preliminary issues which concern alleged errors of law committed by the board of view are before the court as authorized by section 517 of the code.[2]

Appellants' first allegation of error involves the deduction from fair market value of flood insurance proceeds received by the condemnees several years before the condemnation. Appellants contend that treating flood insurance reimbursement in this way violates the collateral source rule, and also penalizes the insured for paying premiums. We find no merit in these contentions.

Section 602 of the code, 26 P.S. §1-602, speaks to the proper measure of damages in eminent domain proceedings. Subsection 602(a) states the standard "before and after" rule of damages as follows: "Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code."

Section 602(c), 26 P.S. §1-602(c), goes on to state: "In case of the condemnation of property in connection with any program or project which property is damaged by floods, the damage resulting therefrom shall be excluded in determining fair market value of the condemnee's entire property interest therein immediately before the condemnation." Under the wording of the statute, flood damage is to

1. Act of June 22, 1964, P.L. (Spec. Sess.) 84, art. V, secs. 515, 516, 26 P.S. §§1-515, 1-516.

2. 26 P.S. §1-517.

be excluded, or ignored, in determining the "before" value of the condemnees' property. The "before take" value, therefore, will not be lowered on account of flood damage, and the difference between the "before and after" value of the condemnees' property interest, the measure of damages, will not be affected.

Section 602(e), 26 P.S. §1-602(e) states in part: "The flood damage to be excluded shall include only actual physical damage to the property for which the condemnee has not received any compensation or reimbursement." The language of subsection (e), read in the context of subsections (a) and (c), indicates that flood damage is to be excluded in determining the "before" value of the property only if the damage is "actual," and the condemnee has not received reimbursement therefor.

Under the present facts, the condemnees had received $14,264 in flood insurance proceeds for damage to the property. Some evidence was offered on behalf of the condemnees to support their claim that they had repaired and restored the residence to pre-flood condition by investing flood insurance proceeds for that purpose. However, no evidence of the dollar amount spent, if any, was adduced. The board properly concluded that the burden of proving reinvestment of such proceeds into the damaged structure lay with the condemnees and that they had failed to meet this burden.

Accordingly, the board properly found as fact that the condemnees had not reinvested the proceeds in the property. As a result of the receipt by the condemnees of the insurance proceeds, subsection (e) makes it clear that appellants cannot receive the benefit conferred by subsection (c). Were it to be

held otherwise condemnees would be beneficiaries of a windfall not contemplated by the code.

We conclude that the proceeds received from flood insurance were properly deducted from the pre-flood value of the condemned property in arriving at the measure of damages. See Official Opinion of the Attorney General 75-14, Volume of 1975, p. 366, 5 Pa. Bull. 1012 (1975).

Condemnees further argue that their property extends to the center of Neshaminy Creek, and not merely to the western side of Riverside Avenue, which runs along the eastern edge of the creek. The board of view found to the contrary, determining that the western boundary of the condemned property was the western side of Riverside Avenue, and measured damages accordingly.

Both parties refer to the deed book description of the property in support of their positions. The original grantor was a subdivider who placed the following restrictions on the property: "All lots are conveyed to the center of the roads or avenues, except Riverside Avenue . . . the westerly side of said avenue in front of all of said lots and part of lot being the Easterly edge of Neshaminy Creek, and are to be so conveyed. . . ." Deed Book 524, page 11. In the deeds subject to the above restrictions, it is stated by way of legal description of the boundaries: "Beginning at a point being the intersection of the westerly side of Riverside Avenue (in front of said premises being sixty feet more or less in width), the westerly side of said Avenue being the easterly edge of the Neshaminy Creek. . . ."

In the light of the above language, we conclude that the board of view was correct in determining that the call line of the surveyor as set forth in the

deeds was the westerly edge of Riverside Avenue rather than the easterly edge of Neshaminy Creek, and that the reference to the edge of the creek was merely descriptive of the location of the edge of the avenue. In ruling on this matter, we are mindful that although the findings of the board of view are subject to review and may be set aside, their authority should not be infringed upon by the substitution of the judgment of the court for that of the viewers where the findings are supported by the record: Marinclin Appeal, 204 Pa. Superior Ct. 552, 205 A. 2d 885 (1964).

Condemnees' final objection to the board of view's report concerns the calculation of the replacement housing allowance. 26 P.S. §1-602A permits the payment of such an allowance, providing in part:

"(a) In addition to payments otherwise authorized, the acquiring agency shall make an additional payment not in excess of fifteen thousand dollars ($15,000) to any displaced person . . . Such additional payment shall include the following elements:

"(1) The amount, if any, which, when added to the acquisition cost of the acquired dwelling equals the reasonable cost of a comparable replacement dwelling."

Acquisition cost is defined in the Eminent Domain Code as follows, 26 P.S. §1-201: "(6) 'Acquisition cost' means general damages, or in the event of amicable acquisition, the price paid by the acquiring agency in lieu thereof."

The board of view calculated general damages to be $31,500, and the cost of a comparable home to be

$32,800. Thus, the board arrived at a replacement allowance of $1,300. Condemnees argue that the board's general damage figure should be reduced by the amount of insurance proceeds received by them, and they maintain that the board should have awarded them a replacement allowance of $15,000. We disagree.

The condemnees have sought a comparable replacement home on the basis of the pre-flood value of their former property. Consequently, the board fixed general damages at a figure of $31,500, as if the property had not been damaged previous to the condemnation. This was totally consistent with the purpose of the Eminent Domain Code, that being to justly compensate a condemnee.

Were the board to have adopted condemnees' view, thereby subtracting the insurance reimbursement from the pre-flood value of the property, condemnees' replacement housing allowance would have been excessive. The board's conclusions that condemnees will have received full and fair just compensation of $31,500 under their award, and that a replacement allowance of $1,300 will permit the purchase of comparable housing at a cost of $32,800 were correct.

ORDER

And now, January 24, 1978, for the foregoing reasons, condemnees' objections to the report of the board of view are overruled and dismissed. The question of the adequacy of just compensation shall be disposed of by trial by jury in due course.